IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| LIVELL FIGGS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **05-808-JPG** |
| | ) | |
| **JOHN EVANS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

Plaintiff Livell Figgs is in the custody of the Illinois Department of Corrections, housed at all relevant times at Pinckneyville Correctional Center. Plaintiff has brought suit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated by the defendant prison officials. Defendant Dr. Adrian Feinerman is before the Court seeking dismissal of Count 4, due to failure to exhaust administrative remedies. **(Doc. 61).** Dr. Feinerman also moves for summary judgment, based on the exhaustion argument and on the merits of the Eighth Amendment claim lodged against him in Count 4 of the complaint. **(Doc. 70).** Similarly, Health Care Unit Administrator Christine Brown seeks summary judgment based on failure to exhaust administrative remedies, and on the merits of the Eighth Amendment claim lodged against her in Count 4 of the complaint. **(Doc. 65).** Plaintiff has filed responses to all three motions, asserting that he exhausted the grievance process, and that there is sufficient evidence for Count 4 to proceed against Feinerman and Brown. **(Docs. 73, 74 & 75).** In reply, defendant Brown

1

highlights the specificity requirement applicable to grievances (20 Ill. Admin. Code 504.810(b)), and a chronological discrepancy that she considers fatal to plaintiff's assertion that he exhausted administrative remedies. **(Doc. 76).**

### Plaintiff's Claims Against Defendants Feinerman and Brown

Count 4 alleges that defendants Dr. Feinerman, Brenda Gale, Nurse Tanya and Christine Brown were deliberately indifferent to plaintiff Figgs' serious medical needs, in violation of the Eighth Amendment. **(Doc. 1 and Doc. 7, p. 2).** At this juncture, only defendants Feinerman and Brown remain as defendants relative to Count 4.

Plaintiff specifically alleges that on December 21, 2003, defendant Correctional Officer Fenton kicked a cell door into plaintiff, slamming plaintiff's fingers such that they were broken in three or four places.[1] Plaintiff was prescribed Motrin/Ibuprofen, and when those ran out, he was offered aspirin, which plaintiff explained was historically ineffective for his headaches and would surely not relieve the pain of his broken bones. On February 2, 2004, plaintiff saw Dr. Feinerman, who declared plaintiff's hand healed after 44 days, and the doctor told plaintiff no more pain medication would be prescribed, but plaintiff could purchase Tylenol from the commissary. Dr. Feinerman also denied plaintiff pain medication on February 4th, 9th and 18th. Plaintiff asserts he could not afford to purchase Tylenol, although plaintiff concedes he later purchased medication whenever it was financially feasible. Plaintiff further claims that Dr. Feinerman denied him proper follow-up care, including a referral to a hand specialist and physical therapy. Plaintiff alleges that, despite a medical recommendation by Dr. Rice that

---

[1] Fenton remains a defendant relative to Count 1, which alleges he used excessive force in violation of the Eighth Amendment, and Count 2, which alleges a state law claim of assault and battery.

2

plaintiff be seen by a hand specialist, Brown refused to authorize such a referral. According to plaintiff, subsequent letters to Brown notifying her of his ongoing problems went unanswered. (Doc. 1, pp. 6-8 and 10).

## Exhaustion of Administrative Remedies

Defendants Feinerman and Brown argue that plaintiff has failed to exhaust administrative remedies relative to Count 4 before filing suit, as required by 42 U.S.C. § 1997e(a).

Exhaustion of administrative remedies in accordance with 42 U.S.C. § 1997e(a), while not jurisdictional per se, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. *Woodford v. Ngo,* 548 U.S. 81, 84-85 (2006); *Booth v. Churner,* 532 U.S. 731, 739 (2001); *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002);*Perez v. Wisconsin Department of Corrections,* 182 F.3d 532 (7th Cir. 1999).

"Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir. 2000). "Defendants may waive or forfeit reliance on [42 U.S.C.] § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." *Perez,* 182 F.3d at 536.

The rules governing the filing and prosecution of a grievance, including the appeal, must be followed to achieve exhaustion; substantial compliance is insufficient. *Lewis v. Washington* 300 F.3d 829, 833-834 (7th Cir. 2002). When prison officials fail to respond to an inmate grievance that remedy is considered exhausted because it has been rendered "unavailable." *Id.* Similarly, a remedy that prison officials impede a prisoner from using is "unavailable." *Dale v.*

*Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Dole v. Chandler*, 438 F.3d 804, 811-812 (7th Cir. 2006).

The grievance procedures applicable to the Illinois Department of Corrections are set forth under Title 20 of the Illinois Administrative Code, Section 504.800 *et seq*. A grievance must be initiated within 60 days after the incident is discovered. The grievance must set forth the "who, what, when and where" of the incident at issue. **20 Ill. Admin.Code 504.810(b).** Basically, an inmate first takes his complaint to a correctional counselor; if this does not resolve the problem, he is to file a written grievance on an institutional form, which is then reviewed by a designated grievance officer. The grievance officer reports his or her findings and recommendations "promptly" to the chief administrative officer, i.e., the warden, and the warden advises the inmate of the institutional decision within two months of receipt of the grievance. In an emergency, an inmate may send his grievance directly to the warden. If the warden determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance is to be decided on an expedited basis. **20 Ill.Admin.Code 504.840.** The inmate may appeal the warden's disposition of the grievance in writing to the director of the Department of Corrections within 30 days of the warden's decision. The director reviews the grievance and the responses of the grievance officer and warden, and determines whether the grievance requires a hearing before the Administrative Review Board. If it is determined that the grievance is meritless or can be resolved without a hearing, the director will issue a final decision; otherwise, the grievance is referred to the Administrative Review Board, which may hold hearings and examine witnesses. The Board submits a written report of its findings and recommendations back to the director, who then makes a final determination

within six months. When an emergency grievance is appealed, the Administrative Review Board is supposed to expedite review. *See* **20 Ill.Adm.Code § 504.810-850 (2003).**

Recently, in *Pavey v. Conley*, 528 F.3d 494 (7th Cir. 2008), the Court of Appeals for the Seventh Circuit re-emphasized that the exhaustion issue must be resolved before discovery may proceed. The appellate court stated:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion (and only to exhaustion) he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, he will then determine whether (a) the plaintiff has unexhausted remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, **528 F.3d at 497-498.**

Of course, in accordance with Federal Rule of Civil Procedure 78, the Court may determine motions upon written statements of support and opposition, without holding a hearing. In this instance, a hearing does not appear necessary, as the parties have had an opportunity to fully brief their positions regarding exhaustion and there are no questions of material fact remaining regarding exhaustion, only questions of law. If the District Court does not agree, the question of exhaustion must be determined, and the Court can re-refer this issue for an evidentiary hearing, if necessary.

Plaintiff Figgs lodged a grievance on January 31, 2004, regarding "Medical Treatment."

**(Doc. 1-3, pp. 1-2).** In the grievance, plaintiff states, "my grievance at this moment is Healthcare," and he explains that he has run out of the Motrin Dr. Rice prescribed for his hand injury. Dr. Rice and several nurses are mentioned in the grievance, but there is no mention of Dr. Feinerman or Christine Brown. In the grievance, plaintiff states in pertinent part:

> I'am asking for you to please help me? I'am in pain, I have asked to see a hand specialist day's after the injury in happened on 12/21/03 it's 1/31/04 now and I still haven't seen a specialist. In any way you think you can help me with my pain, until I can contact or see Dr. Rice and this matter I would truly appreciate it, sir!

**(Doc. 1-3, p. 2).**

Plaintiff acknowledged in his deposition that the grievance was not lodged specifically against defendants Feinerman and Brown; rather, it was against healthcare staff in general. **(Doc. 66-2, p. 23).** Feinerman and Brown, relying on the specificity requirement of 20 Ill. Admin.Code 504.810(b), contend that, since there is no mention of them in the grievance, plaintiff cannot be found to have exhausted available administrative remedies prior to initiating this action. Plaintiff counters that Dr. Feinerman is part of the healthcare staff, and a copy of the grievance would have gone to Dr. Feinerman. Furthermore, plaintiff acknowledges that he had no involvement with Dr. Feinerman until February 2, 2004, which was after the grievance was lodged. **(Doc. 66-2, p. 21).** Similarly, plaintiff argues that Christine Brown is the Health Care Administrator, responsible for overseeing the day-to-day functions of medical staff, medical complaints and the like, and a copy of his grievance went to Brown for a response. Plaintiff acknowledges not communicating his issues about medical care to Christine Brown until he wrote to her on or after February 2, 2004, after the grievance was lodged. **(Doc. 66-2, pp. 21-22).**

Plaintiff is confusing his obligation to exhaust administrative remedies with the theory of respondeat superior and the role of knowledge– concepts that are relevant to liability, but not relevant to exhaustion. Plaintiff's January 31, 2004, grievance does not state the "who, what, when and where" regarding Dr. Feinerman and Christine Brown, as required by 20 Ill. Admin.Code 504.810(b). Even if plaintiff's grievance is read broadly, it cannot encompass the alleged deliberate indifference by Dr. Feinerman and Health Care Administrator Christine Brown because neither of them had any knowledge or involvement until after the grievance was lodged. Therefore, it is clear that plaintiff has failed to exhaust administrative remedies prior to initiating this action against Feinerman and Brown and the remaining claims against them– Count 4 – should be dismissed without prejudice.

## Summary Judgment on the Merits

In the event the Court concludes that plaintiff did satisfy the exhaustion requirement, the following analysis of the defendants' arguments on the merits of Court 4 is offered in the interest of judicial economy.

Generally, the Eighth Amendment obligates prison officials to "provide humane conditions of confinement; . . . [to] ensure that inmates receive adequate food, clothing, shelter and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, **511 U.S. 825, 834 (1994)**; *see also Estelle v. Gamble*, **429 U.S. 97 (1976)**. The Eighth Amendment is violated when an official exhibits "deliberate indifference"– when an official "knows of and disregards an excessive risk to inmate health or safety[;] the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, **511 U.S. at 837**. This standard is

subjective, and is the equivalent of recklessness in the criminal law sense. *Id.*; *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996).

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer*, 511 U.S. at 842.

Mere negligence will not create liability, nor will the provision of medical treatment other than that preferred by the inmate. *Estelle*, 429 U.S. at 107; *Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984). Also, a difference of medical opinion or even a showing of medical malpractice will not alone suffice. *See Estate of Cole Pardue v. Fromm*, 94 F.3d 254, 256 (7th Cir.1996). Delay in providing medical care may be sufficient for liability. *Kelley v. McGinnis*, 899 F.2d 612 (7th Cir. 1990).

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort*

8

*Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings, more substantial evidence must be presented at this stage. "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties" (*Anderson*, 477 U.S. at 247), or by "some metaphysical doubt as to the material facts, (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))."

### 1. Christine Brown

Defendant Christine Brown argues that she lacks the requisite personal involvement for liability to attach, and that if she were found liable, she is protected by qualified immunity because such a conclusion would set a new precedent. **(Docs. 65 and 66).** The crux of Brown's argument is that, although she is the Health Care Unit Administrator at Pinckneyville Correctional Center, she is not a doctor, and she has no ability to override doctors' medical orders, she cannot prescribe medication or order outside consultations, and since she is not the Medical Director, she does not supervise the facilities' doctors. **(Doc. 66-2, p. 1).** Plaintiff counters that Christine Brown is the Health Care Administrator, responsible for overseeing the day-to-day functions of medical staff, medical complaints and the like, and a copy of his grievance went to Brown for a response, which in turn resulted in his grievance being denied.

Personal involvement is required for liability to attach under 42 U.S.C. § 1983. A defendant must be 'personally responsible for the deprivation of a constitutional right." '

9

*Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). "The purpose of § 1983 is to deter state actors ... from using a 'badge of authority' to deprive individuals of rights guaranteed by the Constitution." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (quoting *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). Accordingly, the respondeat superior theory of liability cannot be utilized in a Section 1983 action. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Plaintiff made clear in his deposition that he was suing Brown because she was Dr. Rice and Dr. Feinerman's boss, and he thought she had the authority to approve a consultation with a hand specialist. **(Doc. 66-2, p. 6)**. Plaintiff is mistaken about the extent of Brown's authority. Therefore, Brown is entitled to summary judgment on Count 4, due to her lack of personal involvement.

Qualified immunity shields officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If Brown were found liable based on the aforementioned facts, it would stand in contradiction of the aforementioned legal principles, so Brown would be entitled to qualified immunity.

**2. Dr. Feinerman**

10

Dr. Feinerman characterizes plaintiff's claims as merely a disagreement over the proper course of treatment, and with the doctor's medical opinion that plaintiff's fingers were healed. **(Docs. 70 and 71).** Dr. Feinerman relies on medical records that document a history of treatment of plaintiff's injuries by himself and other medical personnel, but which do not include any recorded recommendation that plaintiff see a hand specialist. **(Doc. 71-2).** Plaintiff asserts, without any support, that on December 22, 2003, Dr. Rice made it clear that plaintiff needed to see a hand specialist, but that request for referral had been denied by Dr. Feinerman. Plaintiff contends his medical records have been altered. **(Doc. 75).**

A review of the medical records submitted by Dr. Feinerman reveals that on December 22, 2003, x-rays of plaintiff's hand were ordered, and that there would be a follow-up after the x-ray report was obtained. **(Doc. 71-2, p. 2).** A nurse's notation on that same date does reflect that plaintiff should be referred to a medical doctor, and that sutures and pain medication were needed. **(Doc. 71-2, p. 3).** X-rays on December 22, 2003, confirmed that plaintiff had two broken fingers, and he was treated and prescribed medication. **(Doc. 71-2, pp. 3-5).** On January 23, 2004, additional x-rays were taken and compared to the first images; fracture lines were still evident. **(Doc. 71-2, p. 8).** On January 30, 2004, plaintiff wanted his prescription of Motrin renewed, but when offered Tylenol, he refused it. **(Doc. 71-2, p. 9).** According to plaintiff's deposition testimony, he did not even see Dr. Feinerman until February 2, 2004, when he took over for Dr. Rice, who had been treating plaintiff. **(Doc. 66-2, p. 21).** Although medical records note that plaintiff saw a physician on February 2, 2004, there are no specific medical records for that date before the Court. In any event, on February 5, 2004, plaintiff received Tylenol. **(Doc. 71-2, p. 10).** Plaintiff continued to be prescribed Tylenol, the last noted prescription being on

March 1, 2004, at which time plaintiff characterized his pain as 3 on a 10-scale, with no swelling or bruising noted. **(Doc. 71-2, pp. 12-16).**

As noted above, mere negligence will not create liability, nor will the provision of medical treatment other than that preferred by the inmate. *Estelle*, **429 U.S. at 107;** *Burns v. Head Jailor*, **576 F. Supp. 618 (N.D. Ill. 1984).** Also, a difference of medical opinion or even a showing of medical malpractice will not alone suffice. *See Estate of Cole Pardue v. Fromm*, **94 F.3d 254, 256 (7th Cir.1996).** "Medical decisions that may be characterized as 'classic example [s] of matter[s] for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. DeTella*, **95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).** This case presents nothing more than a difference of medical care. Therefore, Dr. Feinerman's motion for summary judgments on the merits of Count 4 should be granted.

### Recommendation

For the aforestated reasons, it is the recommendation of this Court that defendants Feinerman and Brown's motions to dismiss and for summary judgment **(Docs. 61, 65 and 70)** be granted, based on plaintiff's failure to exhaust administrative remedies. If this recommendation is accepted, dismissal would be without prejudice.

In the alternative, defendant Feinerman's motion for summary judgment **(Doc. 70)** and defendant Brown's motion for summary judgment, both aimed at Count 4, should both be granted on the merits. If this alternate recommendation is accepted, all claims against Feinerman and Brown would be resolved and they would be entitled to judgment at the close of the case.

In any event, this action must proceed to trial, as Count 1, alleging the use of excessive force by defendant C/O Fenton, remains.

**DATED: August 11, 2008**

s/ Clifford J. Proud
**CLIFFORD J. PROUD
U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before **August 28, 2008**. No extensions will be granted.